IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KRISTINE RATANAVONG,<br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant. | )<br>)<br>)   Case No. 3:21-cv-707<br>)   Judge Richardson/Frensley<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Pleadings. Docket No. 17. Plaintiff has filed an accompanying Memorandum. Docket No. 18. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23. Plaintiff has filed a Reply. Docket No. 24.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on May 2, 2019, alleging that she had been disabled since January 23, 2019, due to the following medical conditions: frozen neck, frozen arm,

1

left arm pain with any movement, pain transferring over to the right side, numbness and tingling bilateral feet/legs/hands, can't move neck or shoulders, upper body pain, upper mid head pain on left side, and memory issues. Docket No. 10, Attachment ("TR") 209, 240. Plaintiff's applications were denied both initially on October 10, 2019 (TR 89, 90) and upon reconsideration on May 21, 2020 (TR 125, 126). Plaintiff subsequently requested (TR 155-56) and received (TR 36) a hearing. TR 20. Plaintiff's hearing was conducted by telephone on August 31, 2020, by Administrative Law Judge ("ALJ") Shannon Heath. TR 36. Plaintiff and vocational expert ("VE"), James Adams, appeared and testified. TR 36.

On September 23, 2020, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 17-30. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since January 23, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and mild rotator cuff tendinitis bilaterally (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequent pushing and pulling with the bilateral

> upper extremities, balancing, kneeling, stooping, and crouching, and occasional climbing and crawling. She is limited to occasional reaching overhead with the bilateral upper extremity and frequent, but not constant handling with the bilateral upper extremity.
>
> 6. The claimant is capable of performing past relevant work as a co-owner of restaurant (DOT #185.167-046). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 23-25, 29.

On October 12, 2020, Plaintiff timely filed a request for review of the hearing decision. TR 204-206. On July 13, 2021, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369
3

(6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.,* 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r*

*of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

**B. Proceedings At The Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that:

> 1. The Commissioner erred as a matter of law by failing to consider whether the plaintiff's cubital tunnel syndrome was a medically determinable severe impairment. Docket No. 18, p. 13-18.
>
> 2. The Commissioner erred as a matter of law by failing to evaluate supportability and consistency of the opinions of Dr. Paul Abbey, in violation of 20 C.F.R. §§404.1520c, and by failing to adequately explain why this opinion was rejected. *Id.* at 18-24
>
> 3. The Commissioner erred as a matter of law by concluding that Plaintiff is capable of performing her past relevant word. *Id.* at 24-29.

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be vacated and remanded for further proceedings. *Id.* at 4.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

7

Case 3:21-cv-00707   Document 30   Filed 06/08/22   Page 7 of 19 PageID #: 780

> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); s*ee also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Failure to Find All Impairments to be Severe and Combined Effect of Impairments on the Residual Functional Capacity**

Plaintiff contends that the Commissioner failed to consider whether Plaintiff's cubital tunnel syndrome was a severe impairment and did not properly consider this condition when evaluating Plaintiff's residual functional capacity ("RFC"). Docket No. 18, p. 13-18.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out

8

groundless claims. *Higgs v. Bowen*, 880 F. 2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F. 2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec. of Health and Human Serv.*, 837 F. 2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations; rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 3:10-cv-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Here, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine and bilateral rotator cuff tendinitis were both severe impairments. TR 23. The ALJ stated that the resulting RFC determination was based on "careful consideration of the entire record," and her explanation demonstrates that she did consider the cubital tunnel syndrome symptoms in determining Plaintiff's RFC. TR 24. For instance, the ALJ mentioned Plaintiff's ulnar nerve decompression surgery and her symptoms of tingling and numbness, which are specifically associated with Plaintiff's cubital tunnel syndrome. TR 25-28. The ALJ thus properly considered the symptoms of this condition in her determination of Plaintiff's RFC. Therefore, her failure to mention Plaintiff's cubital tunnel syndrome by name or to characterize it as an additional severe medical impairment is not reversible error. *Maziarz*, 837 F.2d at 244; *see Lyons*, 2012 WL 529587, at *4.

Plaintiff asserts that the ALJ's statement that, "the limitations in the residual functional capacity would be based on *the cervical spine issues* and resulting and associated complaints as

9

the recent surgery on her elbows was to address associated symptoms from that in her arms," demonstrates that the ALJ did not consider the cubital tunnel syndrome as its own distinct condition when determining the RFC. Docket No. 18, p. 17; TR 28 (emphasis added). However, the ALJ explained that "[t]he medical evidence of record consistently notes the claimant with normal strength and gait, and there [are] no objective findings of difficulties with sensory, feeling, or grip." TR 28. This evidence regarding the severity of Plaintiff's symptoms does not support a finding that the cubital tunnel syndrome lessens Plaintiff's working abilities. The ALJ did mention and consider the symptoms of the Plaintiff's cubital tunnel syndrome, but found them insufficiently severe to merit inclusion in Plaintiff's RFC.

Plaintiff also contends that the opinion of Dr. Abbey reflects an additional restriction, an inability to lift more than ten pounds, which results from the cubital tunnel syndrome and is not addressed in the ALJ's opinion or RFC. Docket No. 18, p. 23. With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

The ALJ based her findings on "careful consideration of the entire record." TR 24. Plaintiff's treatment history did not support including this restriction in the RFC given Plaintiff's improvements through physical therapy in recent months and her retention of normal strength and sensation in her upper extremities. TR 25-28. The ALJ properly evaluated the evidence in

10

reaching her RFC determination, and the Regulations do not require more.

## 2. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ committed reversible error by improperly rejecting the opinion of Dr. Abbey. Docket No. 18, p. 18-24. Defendant responds that the ALJ properly found Dr. Abbey's opinion unpersuasive using the appropriate regulatory factors. Docket No. 23, p. 7-13. Plaintiff replies that the ALJ failed to properly consider supportability, consistency, and the doctor's specialization as required by the Regulations. Docket No. 24, p. 6-9.

On January 18, 2017, the Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed her application after March 27, 2017. TR 209. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings

11

are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .

**(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> **(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section

12

for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

**(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

13

> **(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> **(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.
>
> **(d)   Evidence from nonmedical sources.**  We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520c.

Dr. Paul Abbey began treating Plaintiff on April 7, 2020. TR 579. On July 21, 2020, Dr. Abbey provided a treating source statement letter regarding Plaintiff, which presented the following summarized findings: diagnosis of right and left cubital tunnel syndrome; primary symptoms and impairments of pain and weakness; symptoms and/or impairments are severe enough to interfere with attention and concentration required to perform simple work-related tasks during an eight-hour workday more than 10% of the time; patient would not need to take unscheduled breaks beyond the normal fifteen-minute morning and afternoon breaks and the thirty-minute/one-hour lunch break; patient can lift and/or carry less than ten pounds frequently (meaning one-third to two-thirds of an eight-hour workday) ten pounds frequently, twenty pounds

14

never, and fifty or more pounds never; patient does not have symptoms and/or impairments which would require a medical need to periodically lie down due to pain, fatigue, or other impairments during a normal eight-hour workday; patient does not have symptoms which require a medical need to periodically elevate her legs (at or above the waist level) during a normal eight-hour workday; the above limitations have not lasted, or are not expected to last, twelve or more consecutive months. TR 655.

When discussing Dr. Abbey's opinion, the ALJ stated:

> This is the statement of a physician and surgeon who has treated the claimant only very recently (see Exhibit 14F). At the time of the July 2020 statement, the claimant had just had surgery on her elbows in June 2020, one month prior to the statement. Thus, this appears to be a temporary statement, or at least there is no documentation that this is a permanent statement of limitations rather than post-surgical and temporary limitations. The medical source statement also is not complete, as noted by the claimant's representative at the hearing, and it is not consistent with the totality of the objective medical evidence of record for the period in question or with the provider's own records, which have no objective commentary or findings of concentration/attention issues to support the statement on the medical source statement here (Exhibit 17F).

TR 28.

Ultimately, the ALJ discounted Dr. Abbey's opinion, stating:

> In terms of the medical source statement from Dr. Paul Abbey, it has been considered, but it is not persuasive for the entire period at issue.

TR 28.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 C.F.R. § 404.1520c(a). In discounting Dr. Abbey's opinion, the ALJ discussed the relevant factors, set forth above. *See* 20 C.F.R. § 404.1520c(c)(1) – (c)(5). Specifically, the ALJ found that Dr. Abbey's opinion was not supported by his treatment records or the objective medical evidence and was inconsistent with Plaintiff's

15

treatment records. TR 28. For example, Plaintiff's most recent physical therapy records, dated July 16, 2020, noted that Plaintiff had good mobility, as well as normal sensation and strength in both upper extremities. TR 27, 626-27. The ALJ explained:

> [Dr. Abbey's medical source statement] is not consistent with the totality of the objective medical evidence of record for the period in question or with the provider's own records, which have no objective commentary or findings of concentration/attention issues to support the statement on the medical source statement here (Exhibit 17F).

TR 28.

Beyond discussing supportability and consistency, the ALJ also considered Dr. Abbey's "relationship with the claimant." 20 C.F.R. § 404.1520c(c)(3). Dr. Abbey was Plaintiff's surgeon for her June 2020 elbow surgery and had only begun treating Plaintiff recently. TR 579, 584. The ALJ also recounted the extent, purpose, and examining nature of the treating relationship, and found that Dr. Abbey's report was a temporary statement evaluating Plaintiff's limitations during her recovery from surgery. *See* TR 28. The ALJ fulfilled her duty under the new regulations and properly evaluated the opinion of Dr. Abbey before finding it unpersuasive. The ALJ's finding that Dr. Abbey's opinion was not persuasive is not reversible error.

Furthermore, even if the ALJ had given Dr. Abbey's opinion greater weight, this finding would not change the outcome of the ALJ's decision. Dr. Abbey's report opined that Plaintiff would not need to take extra breaks or lie down during the workday. TR 655. This opinion contradicts Plaintiff's subjective testimony about the severity of her pain and supports the ALJ's finding that Plaintiff was able to work during the time period in question. TR 26-28, 655. Dr. Abbey also noted that he did not anticipate that Plaintiff's limitations would last for 12 months or longer, which supports the ALJ's finding that Dr. Abbey's report was meant to reflect temporary limitations during Plaintiff's recovery from surgery. TR 28, 655. Finally, Dr. Abbey's opinion that

16

Plaintiff could not lift more than 10 pounds would not preclude Plaintiff from performing her past work in a restaurant. TR 235, 655. Thus, even if Dr. Abbey's opinion was given controlling weight, the ALJ's decision stands.

Plaintiff's Reply raises an additional contention that the ALJ should have ordered a consultative examination to determine whether the durational requirement of Plaintiff's cubital tunnel syndrome was satisfied or would be satisfied. Docket No. 24, p. 9. The Sixth Circuit has repeatedly held that the Commissioner is not required to order a consultative examination in order to assist a plaintiff in establishing disability. *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986). Instead, the Commissioner will order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient" to render a decision on the claim. 20 C.F.R. §404.1519a(b). The Commissioner may order a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" when: (1) the additional evidence needed is not contained in the medical records; (2) the evidence from the medical sources cannot be obtained for reasons beyond a plaintiff's control, such as death or noncooperation of a medical source; (3) highly technical or specialized medical evidence is needed and not available from other medical sources; or (4) there is an indication in a plaintiff's condition that is likely to affect his/her ability to work, but the then-current severity of her impairment is not established. *Id.*

These circumstances are not present in the instant action; rather, the medical record in the case at bar is replete with physician reports, treatment notes, and physical therapy assessments specifically concerning Plaintiff's alleged impairments, all of which were considered by the ALJ.

17

*See e.g.,* TR 26-29. The ALJ's opinion does not reflect a perceived need for additional information about Plaintiff's cubital tunnel syndrome; rather, she found the existing record to be sufficient for determining the expected duration of Plaintiff's condition. TR 29. Accordingly, a consultative examination was not necessary, and Plaintiff's argument fails.

**3. Incorrect DOT Classification of Past Job**

Plaintiff contends that the ALJ erred by finding that Plaintiff can perform her past relevant because the vocational expert's testimony regarding plaintiff's past work was inconsistent with the Dictionary of Occupational Titles ("DOT"). Docket No. 18, p. 25-28; *see* 1991 WL 645958 (4th ed. 1991). The vocational expert testified that Plaintiff's past job would fall under DOT Section 185.167-046, which he called "co-owner of a restaurant." TR 49. This DOT section actually describes the position of a "Retail Store Manager." *See* DOT 185.167-046.

The Social Security Administration has imposed an affirmative duty for ALJs to ask vocational experts whether the evidence the expert provided conflicts with the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000); *see Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009.) Under SSR 00-4p, ALJs must also obtain a reasonable explanation from the vocational expert to reconcile apparent conflicts between the testimony and the DOT. 2000 WL 1898704, at *4. Where no apparent conflicts arise, however, the ALJ does not have an affirmative duty to conduct an independent investigation to determine the accuracy of expert testimony. *See Martin v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 369, 374 (6th Cir. 2006).

Here, the ALJ satisfied her duty under SSR 00-4p by asking the vocational expert during the hearing whether his testimony conflicted with the DOT. TR 58; *see Lindsley*, 560 F.3d at 606. Additionally, the vocational expert's error in citing an incorrect DOT section is a harmless error that did not impact the ALJ's decision. The ALJ found that Plaintiff could perform her past relevant

18

work "as actually and generally performed" by her, not based on a list of requisite skills for a DOT listing. TR 29. Plaintiff's past work co-managing a restaurant involved lifting at most 10 pounds, sitting for one hour, standing for five hours, and walking for two hours. TR 235. The ALJ's determination of Plaintiff's RFC means Plaintiff can still perform this as she did previously. TR 29. The vocational expert's DOT classification error is therefore irrelevant to the ALJ's ruling. Furthermore, as explained above, even if Plaintiff's RFC reflected Dr. Abbey's opinion and included a limitation to lifting a maximum of ten pounds, this would not preclude Plaintiff from performing her previous relevant work. *See* TR 235, 655.

## IV.   RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.   Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.   Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.   *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**